**Edward T. DORAN, III, a minor, by his parents and natural guardians, Edward T. Doran, II, and Emagene Doran, and Edward T. Doran, II, and Emagene Doran, in their own right, Plaintiffs,**

v.

**Ivor LEE, James Lee, Century Boat Company, a corporation, and Reimann's Marine Service, Inc., Defendants.**

**Civ. A. No. 61–68 Erie.**

United States District Court
W. D. Pennsylvania.

Aug. 23, 1968.

---

12. See *Fortson v. Morris*, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966), reh. den. 385 U.S. 1021, 87 S.Ct. 719, 17 L.Ed.2d 560 (1967).

Gilbert S. Soloman, Rosenberg & Kirshner, Pittsburgh, Pa., for plaintiffs.

John M. Wolford, Daniel Brocki, and Gary J. Shapira, Dunn, Wolford & Ses-

ler, Erie, Pa., for defendants Ivor and James Lee.

William K. Herrington, Weis & Weis, Pittsburgh, Pa., for defendant Century Boat Co.

## OPINION

WEBER, District Judge.

This case arises out of an action to recover damages for injuries sustained in a motor boat explosion by minor plaintiff who was a guest passenger therein. Defendants are the owners of the boat, the manufacturer of the boat, and the retailer who sold the boat. The manufacturer is the only defendant having citizenship diverse from the plaintiffs.

The complaint is called a "libel" and plaintiffs and defendants are called "libellants" and "respondents" in accordance with the former admiralty practice before the amendments to the Federal Rules of Civil Procedure, effective July 1, 1966, consolidating the forms of pleading in law, equity and admiralty.

The complaint invokes the admiralty jurisdiction of this court. There is no other ground of jurisdiction either alleged or apparent from the pleadings involving all parties. There is possible diversity jurisdiction between plaintiffs and defendant Century Boat Company, a foreign corporation.

The accident occurred in Conneaut Lake, in Crawford County, Pennsylvania, in this judicial district. Defendants Ivor Lee and James Lee, and Century Boat Company have moved to dismiss for lack of admiralty jurisdiction. In support of the motion they have produced undisputed evidentiary material showing that Conneaut Lake is an entirely landlocked lake, fed from springs and shallow inlets, none of which can support access or exit by water craft. Neither as now situated nor in its natural state is the lake connected with any other waters so as to constitute part of a navigation system over which inter-

state and foreign commerce could flow. Over a century ago the lake was connected by a channel to supply water to the Erie Extension Canal, which connected Lake Erie and the Ohio River.

To be resolved is whether Conneaut Lake is navigable in fact so as to confer admiralty jurisdiction upon this Federal court as provided by Article III, Section 2, of the Constitution of the United States and by 46 U.S.C. § 740. Section 740 confers admiralty jurisdiction in all cases of damage or injury caused by a vessel on navigable water. The problem is to define navigable waters for this purpose and to delineate the areas where the definition applies.

The determination of what constitutes navigable waters is one of varied interpretation, dependent upon the purpose for which the definition is applied. It can be divided into three categories of cases: those dealing with proprietary interests in riparian or littoral lands and the power of the States to control the use of the riparian or littoral land, as in Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605, 74 A. 648 (1909); those cases arising under the broad powers of Congress under the Commerce Clause of the U.S. Constitution, as in United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); and those which have defined navigation to determine the admiralty jurisdiction of the Federal courts, as in The Daniel Ball, 10 Wall. 557, 77 U.S. 557, 19 L.Ed. 999 (1870), and Shogry v. Lewis, 225 F.Supp. 741 (W.D.Pa. 1964). (See Guinn, "An Analysis of Navigable Waters of the United States", XVIII Baylor Law Review, No. 4, Fall 1966).

The records of the Constitutional Convention reveal that admiralty law was considered pre-eminently a field of jurisdiction to be exercised by the courts of the United States because of the necessity of applying a uniform body of law in a field involving commercial relations between states and with foreign nations, a field where a substantial body

of private international law existed and was applied by the principal commercial nations of the world. (See Dumbauld, "The Constitution of the United States". p. 325 (1964).)

■ Such law must be applied in all waters forming part of the stream of interstate or foreign commerce, but the limitations on the exercise of jurisdiction by the United States' courts prohibits its application to what are essentially common law actions of an exclusively local nature.

Inland lakes having no existing connection to other watercourses by which a stream of commerce is or may be carried have been declared not to be within the admiralty jurisdiction in a number of cases:

Judge Willson, of this court, held in Shogry v. Lewis, cit. supra, that Chautauqua Lake, in western New York state, near the borders of this district, was not such a body of water. Chautauqua Lake is about 20 miles long and 3 miles wide, and carries a substantial number of water craft including a ferry transporting passengers and automobiles across its width. Its outlet carries waters eventually into Conewango Creek, and thence to the Allegheny River, but no interstate or foreign commerce can pass into or out of the lake by navigable waters. Judge Willson applied the test of The Daniel Ball, cit. supra.

In Marine Office of America v. Manion, 241 F.Supp. 621 (D.Mass.1965), involving a collision of a motor boat with a yacht club dock on Lake Winnipesaukee in New Hampshire, the court denied admiralty jurisdiction where it found the lake to be land-locked and not connected with any other navigable water which would carry interstate commerce.

In re Builders Supply Co., 278 F.Supp. 254 (D.C.Iowa 1968) involved a motor boat explosion in Clear Lake in Iowa. The court found that the lake was inland, completely land-locked and not connected with other waters as a highway of commerce, and denied admiralty jurisdiction.

■ We doubt whether plaintiffs, in asserting their claim to admiralty jurisdiction, have considered the admiralty doctrine of limitation of liability which would limit recovery against the owners to the value of the vessel. 46 U.S.C. § 183. This doctrine is as broad as the general admiralty and maritime jurisdiction of the Federal courts. Butler v. Boston & Savannah S. S. Co., 130 U.S. 527, 9 S.Ct. 612, 32 L.Ed. 1017 (1889). We are not passing upon the applicability of this doctrine to this case, but it is brought to our attention because several of the cases dealing with admiralty jurisdiction on inland lakes have arisen under the provisions of 46 U.S.C. § 183 et seq. where the defendant invoked the admiralty jurisdiction to limit liability. The limitation was denied in the following cases because the court determined that the matter did not fall within the admiralty jurisdiction: In re Builder's Supply Co., cit. supra; Madsen's Petition, 187 F.Supp. 411 (N.D.N.Y.1960) where the accident happened on Lake Pleasant, Hamilton County, New York, a small, land-locked mountain lake in the Adirondacks; and in Howser's Petition, 227 F.Supp. 81 (D.C.N.C.1964) involving Lake Hickory, an impounded lake on the Catawba River in North Carolina.

The fountainhead of this doctrine of what constitutes "navigable waters" to confer admiralty jurisdiction is The Daniel Ball, 77 U.S. 557 (1870). This case involved the act of Congress of July 7, 1838 (5 Stat. at Large 304) which required the licensing of vessels transporting merchandise or passengers on bays, lakes, rivers, or other navigable waters of the United States. The Daniel Ball, a steamer of 123 tons, was operating on Grand River, in Michigan, between Grand Haven and Grand Rapids. Grand River connects with Lake Michigan but the steamer The Daniel Ball did not operate in Lake Michigan because it had

only two feet of draft and was not safe for lake navigation. The steamer carried passengers and goods coming from other states and destined for other states. The steamer was not licensed under the statute and a libel in admiralty was filed by the United States. The defense recognized that the English doctrine of the "ebb and flow of the tide" no longer determined the limits of admiralty jurisdiction because of the decision in Genessee Chief v. Fitzhugh, 12 How. 443, 53 U.S. 443, 13 L.Ed. 1058 (1851), but it contended that the Grand River and the operation of The Daniel Ball on it were entirely confined within the state of Michigan and that these were domestic waters outside the admiralty jurisdiction. The court held otherwise in a classic definition:

(563) "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel over water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which commerce is conducted by water."

In The Propellor Genessee Chief v. Fitzhugh, cit. supra, the Court held that the admiralty jurisdiction extended to the Great Lakes because they were in truth inland seas, they bordered different states and a foreign country, they carried great streams of commerce and hostile fleets have encountered on them. There was equal necessity for the exercise of the admiralty jurisdiction as well as the prize power of the courts of admiralty on these waters as there was on tidal waters. The Court specifically upheld the jurisdictional statute under the admiralty power and rejected the argument that it could be sustained under the Commerce Clause.

A series of cases cited by the plaintiffs in support of their claim to admiralty jurisdiction are actually "navigability" cases decided under the powers of Congress under the Commerce Clause of the Constitution. This is a different constitutional power; it defines the powers of Congress to legislate but it cannot be used to enlarge the specific jurisdiction of the United States courts in admiralty. The powers of Congress to legislate are greater than the powers of the Federal courts to adjudicate.

Thus, under the Rivers and Harbors Act of 1899 (30 Stat. 1121); and the Federal Water Power Act of 1920 (41 Stat. 1063), and the Federal Power Act of 1935 (49 Stat. 803) Congress imposed limitations on the rights to build bridges, dams, or other obstructions over or in watercourses that were navigable or capable of being made navigable. United States v. Appalachian Electric Power Co., cit. supra upheld the action of the United States over a river capable of being made suitable for use in navigation. "The power of the United States over its waters which are capable of use as interstate highways arises from the commerce clause of the Constitution". 311 U.S. p. 404, 61 S.Ct. p. 298.

Similarly, in Economy Light and Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921), a river, once declared navigable by Congress, but not so used for over 100 years, was involved. The court held that a river having actual navigable capacity in its natural state and capable of carrying commerce among the states, is within the

power of Congress to preserve for the purpose of future transportation, even though it be not at present used for such commerce, and be incapable of such use according to present methods, either by reason of changed conditions, or because of artificial obstructions. (p. 123, 41 S. Ct. p. 413) * * * The river in question being once a navigable waterway and recognized as such by Congress, and having been used for trade and Commerce, it might again become so. If they are to be abandoned, it is for Congress, not the courts to so declare." (p. 124, 41 S.Ct. p. 413).

 The fact that Congress may have power to legislate and control a waterway because it once was or may in the future become an artery of interstate and foreign commerce does not confer admiralty jurisdiction on this court because the jurisdiction of this court is not co-extensive with the power of Congress to legislate in the control of interstate commerce. McFaddin Express, Inc. v. Adley Corp., 240 F.Supp. 791 (D.C.Conn.1965), aff'd 346 F.2d 424 (2nd Cir. 1965).

A third line of cases in which the word "navigation" arises is the proprietary cases involving riparian or littoral rights of abutting land owners. Conneaut Lake is specifically involved here because it has been judicially determined as navigable for the purpose of establishing public rights thereon. Conneaut Lake Ice Co. v. Quigley, cit. supra. This case involved a claim of the owners of land surrounding the lake that they were the owners of the lands thereunder and thus entitled to control the use of its waters. The defendant claimed that the lake was part of the public waters of the Commonwealth of Pennsylvania. The court found the lake navigable in fact and also navigable by state legislative declaration in that its inlet creek was declared part of the public streams of the state for the passage of boats by the Act of March 21, 1798 (3 Smith's Laws 320). Navigability in fact was established by the showing that up to 150,000 passengers in a season were carried by the excursion steamers between the town of Conneaut Lake and the Exposition Park, and that the agreement between the plaintiff and the navigation company expressly recognized its navigable character in attempting to control a monopoly of navigation on the lake.

The court's final conclusion was that where a lake is navigable in fact, the patentee of the land bordering the lake takes only the fee to the water's edge; the waters and the bed of the lake belong to the state in its sovereign capacity for the benefit of all the people. As illustrative of the use made of the lake by the state in its sovereign capacity the court pointed to the fact that the state used the waters of the lake as a supply for the Erie Extension Canal, that it raised the level of the lake by the construction of a dam, and that when the canal was abandoned the lake was allowed to fall to its former level and the fee to the former submerged land became vested in the state. Thus the plaintiffs could not restrain the use of the lake by defendants on the grounds of any proprietary rights.

We cannot find substance to plaintiff's argument that Conneaut Lake is navigable under the admiralty definition because it was once connected by a feeder channel conveying water from the lake to the Erie Extension Canal. The canal system has been gone for almost a century. The feeder channel is dry and filled in and is crossed by roads and culverts, as shown by defendant's affidavits and photographs. Thus the lake does not meet the test of The Daniel Ball that it forms part of a continuous highway by itself or by uniting with connecting waters, by which commerce is or may be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water.

We are of the opinion that neither the cases finding navigability for the purpose of determining proprietary rights, nor the cases finding navigability past, present or potential for the purpose of supporting regulation by Congress under the Commerce Clause, establish any controlling law .for the purpose of determining navigability sufficient to support the exercise of admiralty jurisdiction by this court.

While we have come to the conclusion that this action cannot be maintained in this court under the admiralty jurisdiction, the pleadings indicate possible diversity jurisdiction between plaintiffs and defendant Century Boat Company, a foreign corporation alleged to do business in Pennsylvania. A complaint should not be dismissed on the grounds of lack of jurisdiction if it reveals that any grounds for jurisdiction exist between plaintiff and any defendant and is not otherwise subject to objection that the parties dismissed are indispensible parties to the action. "The district court, then, has the power to, and in the exercise of its discretion may, permit parties to be dropped, if they are not indispensible, and thereby perfect jurisdiction." 3 Moore's Federal Practice, ¶ 15.09, p. 947, citing Ackererley v. Commercial Credit Co., 111 F. Supp. 92 (D.N.J.1953). Furthermore, where an action has been brought under a federal statute and the statute is inapplicable, plaintiffs may be granted leave to amend to change the whole jurisdictional basis of the suit and convert it into a civil action based on diversity of citizenship. International Ladies' Garment Workers' Union v. Donnelly Garment Co., 121 F.2d 561 (8th Cir. 1941).

Therefore, we will dismiss the action for lack of admiralty jurisdiction but allow plaintiffs leave to amend to plead diversity jurisdiction against any defendant having diverse citizenship, which, from the records of this case appears to be only defendant Century Boat Company.