**Bertha K. ADAMS, as Administratrix of the Estate of George F. Adams, Deceased, Plaintiff-Appellant,**

v.

**The MONTANA POWER COMPANY, a Montana Corporation, Defendant-Appellee.**

**No. 73–1871.**

United States Court of Appeals, Ninth Circuit.

June 27, 1975.

Rehearing Denied Aug. 11, 1975.

---

Charles A. Smith, Robert T. Cummins, Helena, Mont., for plaintiff-appellant.

Cordell Johnson, Helena, Mont., for defendant-appellee.

OPINION

Before BROWNING and CHOY, Circuit Judges, and WEIGEL, District Judge.*

WEIGEL, District Judge:

Appellant seeks review of the district court's order dismissing the action for want of jurisdiction. The question presented is whether admiralty jurisdic-

* Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation.

tion encompasses a tort claim arising from the capsizing of a small pleasure boat on a dam-obstructed body of water no longer traversed by commercial maritime shipping. We affirm the judgment of the district court.

The relevant facts are not in dispute. Appellant's decedent, riding in a small boat near Hauser dam on the Missouri River in Montana, was drowned when a discharge of water from the dam overturned the craft. Appellant brought suit in admiralty against the operators of the dam for wrongful death. 28 U.S.C. § 1333(1). The stretch of river on which the accident occurred is twenty-five miles long, wholly in Montana, and completely obstructed by Hauser dam at one end and by Holter dam at the other. The trial court found that only non-commercial fisherman, water skiers, and pleasure boaters made use of the river.

■ A cause of action sounding in tort is not cognizable under admiralty jurisdiction unless the alleged wrong occurs on navigable waters and bears a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

■ A waterway is navigable provided that it is used or susceptible of being used as an artery of commerce. *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871); *The Propeller Genesee Chief v. Fitzhugh,* 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851). Neither noncommercial fishing nor pleasure boating nor water skiing constitutes commerce. Commerce for the purpose of admiralty

jurisdiction means activities related to the business of shipping. *George v. Beavark, Inc.,* 402 F.2d 977 (8th Cir. 1968). *See also United States v. Crow, Pope & Land Enterprises, Inc.,* 340 F.Supp. 25 (N.D.Ga.1972). As the Supreme Court noted in *The Montello,* 87 U.S. (20 Wall.) 430, 442, 22 L.Ed. 391 (1874):

> It is not, however, as Chief Justice Shaw said, "every small creek in which a fishing skiff or gunning canoe can be made to float at high water which is deemed navigable, but, in order to give it the character of a navigable stream, it must be generally and commonly useful to some purpose of trade or agriculture."

■ The logic of requiring commercial activity is evident. The purpose behind the grant of admiralty jurisdiction was the protection and the promotion of the maritime shipping industry through the development and application, by neutral federal courts, of a uniform and specialized body of federal law.[1] *See Crosson v. Vance,* 484 F.2d 840 (4th Cir. 1973). The strong federal interest in fostering commercial maritime activity outweighed the interest of any state in providing a forum and applying its own law to regulate conduct within its borders.[2] It follows that admiralty jurisdiction need and should extend only to those waters traversed or susceptible of being traversed by commercial craft. In the absence of commercial activity, present or potential, there is no ascertainable federal interest justifying the frustration of legitimate state interests.

---

1. The primary purposes of the admiralty appear to be to create some degree of uniformity in dealing with the far-flung shipping industry and to work an accommodation of the interests of both that industry and of the persons or entities who must or elect to work therefor or deal therewith. All of this is, of course, geared toward achieving some assurance that the industry will continue to attract a sufficient flow of risk capital to fulfill the shipping needs of this nation and the world.

7A Moore, Federal Practice, ¶ .200[3], p. 2077 n. 25 (2d ed. 1972). *See also* Stolz, *Pleasure*

*Boating and Admiralty,* 51 Calif.L.Rev. 661, 665 (1963); Black, *Admiralty Jurisdiction,* 50 Colum.L.Rev. 259, 261 (1950). Professors Gilmore and Black expressed this idea in *The Law of Admiralty* (1957), at p. 11:

> Maritime law was secreted in the interstices of business practice. It arose and exists to deal with problems that call for legal solution, arising out of the conduct of the sea transport industry.

2. *See* Black, *Admiralty Jurisdiction,* 50 Colum. L.Rev. 259, 268–69 (1950); Stolz, *Pleasure Boating and Admiralty,* 51 Calif.L.Rev. 661, 664–65 (1963).

■ The district court found that this dam-obstructed portion of the Missouri River was traversed by small pleasure craft only, and that no commercial shipping occurred or was likely to occur. Under the rationale above, the waterway was not navigable for purposes of exercising admiralty jurisdiction.

While the court below found that the waterway was navigable "in the sense that the federal government has jurisdiction over it under the commerce clause . . . .," [3] this finding in no way weakens the conclusion that the waterway was non-navigable in a jurisdictional sense. The commerce clause vests power in Congress to regulate all waters navigable in interstate or foreign commerce. *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940). In determining the scope of navigable waters for purposes of exercising the commerce power, the courts developed the doctrine that if a waterway was navigable in its natural and ordinary condition, it reamined so despite subsequent obstruction. *Economy Light Co. v. United States,* 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921). The district court found navigability under the commerce clause on the authority of an earlier decision holding that the portion of the Missouri River in question was navigable in its natural and unobstructed condition. *Montana Power Co. v. Federal Power Comm.,* 87 U.S.App. D.C. 316, 185 F.2d 491 (1950).

■ Early courts, believing that the scope of the commerce clause power and admiralty jurisdiction were coextensive, employed the same definition of navigable waters for both. *See, e. g., The Genesee Chief, supra.* The Supreme Court subsequently held, however, that the extension of the judicial power of the United States to "all Cases of admiralty and maritime Jurisdiction," Const. Art. III, § 2, cl. 1, was independent of the commerce clause. *In re Garnett,* 141 U.S. 1, 11 S.Ct. 840, 35 L.Ed. 631 (1891); *Providence & New York Steamship Co. v. Hill Mfg. Co.,* 109 U.S. 578, 3 S.Ct. 379, 617, 27 L.Ed. 1038 (1883). The decisions defining "navigable waters" under that clause are thus not dispositive of the question under admiralty jurisdiction. *See Doran v. Lee,* 287 F.Supp. 807 (W.D. Pa.1968); 7A Moore, Federal Practice, ¶ .200[3].

■ The definitions of navigability may vary because, as in the present case, the purposes served by the commerce clause and admiralty jurisdiction may vary. Congress' commerce power is designed in part to preserve and protect the nation's waterways which, in their natural condition, are navigable in interstate commerce. *United States v. Appalachian Electric Power Co., supra.* By virtue of this power, Congress may prevent or regulate obstruction of these waterways by the states through which they pass. *United States v. Rio Grande Dam and Irrigation Co.,* 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136 (1899). The damming of a previously navigable waterway by a state cannot divest Congress of its control over a potentially useful artery of commerce, since such obstructions may always be removed. Hence the courts have reasonably held that a navigable river is not rendered non-navigable by artificial obstruction.

However, if the damming of a waterway has the practical effect of eliminating commercial maritime activity, no federal interest is served by the exercise of admiralty jurisdiction over the events transpiring on that body of water, whether or not it was originally navigable. No purpose is served by application of a uniform body of federal law, on waters devoid of trade and commerce, to regulate the activities and resolve the disputes of pleasure boaters. *See George v. Beavark, Inc., supra.*[4] Only

3. 354 F.Supp. 1111 (D.Mont.1973).

4. In *George v. Beavark, Inc.,* a stream suitable only for float fishing in flat-bottomed boats was held to be non-navigable. The court stated:

There is no history of the stream's being used commercially for hauling passengers or goods and no barges were ever seen on the river. . . . Float fishing is nothing more than pleasure fishing and is conducted

the burdening of federal courts and the frustrating of the purposes of state tort law would be thereby served.

We therefore conclude that, notwithstanding the waterway's navigable status under the commerce clause, it was not navigable for purposes of exercising admiralty jurisdiction. This conclusion makes it unnecessary to reach questions relating to traditional maritime activity.

Affirmed.

in much the same manner as game fishing in most any lake or stream  .  .  .. Such pastime, however, standing alone is too fragile a basis to support a holding of legal navigability, absent any evidence of a channel of useful purpose to trade or commerce.
402 F.2d at 979. This case suggests there is little sense in finding navigable a body of water traversed only by pleasure craft. It should be noted, however, that the court cited with approval the doctrine of *United States v. Appalachian Electric Power Co., supra,* that a river once navigable remains so. Where commerce moves and the waters are legally navigable, there may be a federal interest in extending admiralty jurisdiction to pleasure craft. *See St. Hilaire Moye v. Henderson,* 496 F.2d 973 (8th Cir. 1974).