**Kimberly Ann COOPER et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 77–4173–CV–C.**

United States District Court, W. D. Missouri, Central Division.

May 6, 1980.

Ronald R. McMillin, Cullen Coil, Carson, Monaco, Coil, Riley & McMillin, P. C., Jefferson City, Mo., Duke W. Ponick, Jr., Kansas City, Mo., for plaintiffs.

Ronald S. Reed, Jr., U. S. Atty., Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., Thomas W. Snook, Trial Atty., U. S. Dept. of Justice, Civil Div. Torts Branch, Washington, D. C., for defendant.

## ORDER

ELMO B. HUNTER, District Judge.

The United States moves the Court to dismiss plaintiffs' suit in admiralty against it for lack of subject matter jurisdiction. Plaintiffs invoke this Court's jurisdiction under the Suits in Admiralty Act, 46 U.S.C. § 742, which provides that "any appropriate nonjury proceeding in personam" may be brought against the United States in cases in which, "if a private person or property were involved, a proceeding in admiralty could be maintained, . . ." and 28 U.S.C. § 1333, which provides that the federal district courts shall have original jurisdiction, exclusive of state courts, over any civil case of admiralty or maritime jurisdiction. If plaintiffs' cause of action against the United States falls within the admiralty and maritime jurisdiction of this Court, defendant's motion must be denied; otherwise, the Court has no jurisdiction over the subject matter of plaintiffs' action against the United States and it must be dismissed.

Plaintiffs' action is for the wrongful death of their father. The parties have stipulated that his death was a result of the collision of two motorboats on the Lake of the Ozarks, a body of water located entirely within the State of Missouri. It is defendant's contention that the admiralty jurisdiction of the federal courts does not extend to Lake of the Ozarks. The parameters of federal admiralty jurisdiction were described by the Supreme Court in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972): the tort must have a maritime locality, that is, it must occur on navigable waters; and it must bear a "significant relationship to traditional maritime activity." The second part of that test is clearly satisfied in this case. The Eighth Circuit has held that the operation of pleasure boats has a sufficient nexus with traditional maritime activity for purposes of federal admiralty jurisdiction. *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir. 1974). The remaining issue, and that in dispute, is whether the Lake of the Ozarks is to be considered "navigable water" for purposes of federal admiralty jurisdiction.

In 1957 the Eighth Circuit stated that, although it is entirely within the State of Missouri, the Lake of the Ozarks is "navigable water within the admiralty and maritime jurisdiction of the United States." *Loc-Wood Boat & Motors, Inc. v. Rockwell*, 245 F.2d 306 (8th Cir. 1957). The opinion of the district court in that case contains a description of the Lake of the Ozarks:

The Lake of the Ozarks in central Missouri is the result of the impounding of the waters of the Osage River, a navigable stream, by Bagnell Dam. As a consequence, it is physically impossible for

boats to operate freely up and down the Osage River. However, that fact does not destroy the legal concept of navigability since the Osage River is an historically navigable stream, and remains under the control of the Department of Commerce, which licenses boats and vessels operating upon the Lake of the Ozarks. Such boats and vessels are also subject to inspection as to seaworthiness by the United States Coast Guard.

*In re Wood's Petition*, 145 F.Supp. 848 (W.D.Mo.1956). Plaintiffs argue that *Loc-Wood Boat & Motors* conclusively determines the question of federal admiralty jurisdiction over the Lake of the Ozarks. The Government argues that if presented the question today, the Eighth Circuit would reverse itself and overrule *Loc-Wood Boat & Motors.*

The question of admiralty jurisdiction in cases of this type has been further explored since *Loc-Wood Boat & Motors* was decided in 1957. In *Adams v. Montana Power Company*, 528 F.2d 437 (9th Cir. 1975), the Ninth Circuit held that that part of the Missouri River which lies between the Hauser dam and the Holter dam, both of which completely obstruct the river, and located entirely within the State of Montana, is not navigable for the purposes of admiralty jurisdiction. Citing the definition of "navigable" in *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871), that a waterway be used or susceptible of being used as an artery of commerce, the court noted that, although the river was used by noncommercial fishermen, water skiers, and pleasure boaters, it was not used for commerce, that is, "activities related to the business of shipping. *George v. Beavark, Inc.*, 402 F.2d 977 (8th Cir. 1968)."

> The logic of requiring commercial activity is evident. The purpose behind the grant of admiralty jurisdiction was the protection and the promotion of the maritime shipping industry through the development and application, by neutral federal courts, of a uniform and specialized body of federal law. [citation omitted] The strong federal interest in fostering commercial maritime activity outweighed the interest of any state in providing a forum and applying its own law to regulate conduct within its borders. It follows that admiralty jurisdiction need and should extend only to those waters traversed or susceptible of being traversed by commercial craft. In the absence of commercial activity, present or potential, there is no ascertainable federal interest justifying the frustration of legitimate state interests.

That the waterway was "navigable" such that the federal government could exercise its power of regulation under the commerce clause did not conflict with the court's finding that the river was not navigable in a jurisdictional sense. The court distinguished the concept of navigability under the commerce clause with that governing the reach of the jurisdiction of the federal courts over admiralty cases.

> The definitions of navigability may vary because, as in the present case, the purposes served by the commerce clause and admiralty jurisdiction may vary. Congress' commerce power is designed in part to preserve and protect the nation's waterways which, in their natural condition, are navigable in interstate commerce. *United States v. Appalachian Electric Power Co. [311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243]*, supra. *By virtue of this power, Congress may prevent or regulate obstruction of these waterways by the states through which they pass.* United States v. Rio Grande Dam and Irrigation Co., *174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136 (1899). The damming of a previously navigable waterway by a state cannot divest Congress of its control over a potentially useful artery of commerce, since such obstructions may always be removed. Hence the courts have reasonably held that a navigable river is not rendered non-navigable by artificial obstruction.*

> However, if the damming of a waterway has the practical effect of eliminating commercial maritime activity, no federal interest is served by the exercise of admiralty jurisdiction over the events tran-

spiring on that body of water, whether or not it was originally navigable. No purpose is served by application of a uniform body of federal law, on waters devoid of trade and commerce, to regulate the activities and resolve the disputes of pleasure boaters. *See George v. Beavark, Inc., supra.* Only the burdening of federal courts and the frustrating of the purposes of state tort law would be thereby served.

528 F.2d at 440–41.

The Seventh Circuit adopted the reasoning of *Adams* in *Chapman v. United States,* 575 F.2d 147 (7th Cir. 1976), a case brought under the Suits in Admiralty Act. The court held that even though the Kankakee River had at one time supported some commercial navigation and was navigable for purposes of Congress' regulatory power under the commerce clause, it was not navigable for purposes of federal admiralty jurisdiction because it was "not in fact used for commercial navigation and [was] not susceptible of such use in [its] present state." 575 F.2d at 151.

The courts in *Adams* and *Chapman* held that exclusive federal admiralty jurisdiction should supercede the jurisdiction of the state courts and the state tort law only where the purpose of the grant of federal admiralty jurisdiction was served, that is, on those waters actually used or susceptible of being used for commercial navigation. *See also Oseredzuk v. Warner Company,* 354 F.Supp. 453 (E.D.Pa.1972), *aff'd,* 485 F.2d 680 (3d Cir. 973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 873 (1974). The 1974 ruling of the Eighth Circuit in *St. Hilaire Moye v. Henderson, supra,* that the operation of a boat on navigable waters, no matter what its size or activity, is a "traditional maritime activity," emphasized the *purpose* of the admiralty jurisdiction of the federal courts: the compelling federal interest in extending the jurisdiction of federal courts is the protection and promotion of commercial navigation.

> The navigation of waterborne vessels [small pleasure craft] on those waters, even if not directly engaged in commerce themselves presents a potential danger to the operation of vessels which are engaged in commerce on those waters. . .
> The law of admiralty must surely cover the operation of vessels which present potential dangers to commerce on navigable waters.

496 F.2d at 979.

In its most recent discussion of the concept of navigability, the Supreme Court quoted with approval language of the district court in that case: "[A]ny reliance upon judicial precedent must be predicated upon careful appraisal of the *purpose* for which the concept of 'navigability' was invoked in a particular case." *Kaiser Aetna v. United States,* 444 U.S. 164, 171, 100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979) (emphasis in original). The Court distinguished the varying purposes for which the concept of "navigability" is used: to define the scope of Congress' regulatory authority under the commerce clause, to determine the scope of the statutory authority of the Corps of Engineers, or to establish the limits of the jurisdiction of federal courts over admiralty and maritime cases. There is no dispute that the Lake of the Ozarks is navigable for the purpose of Congress' power to regulate under the commerce clause; the vessels thereon are subject to federal regulation and inspection by the United States Coast Guard. The parties dispute whether the lake is navigable for the purpose of federal admiralty jurisdiction. The Government contends that the purpose of federal admiralty jurisdiction is not served by extending that jurisdiction to the Lake of the Ozarks. The argument is that because the lake is located entirely within the State of Missouri, has no navigable outlet, and is not used or susceptible of use by commercial navigation, the underlying justification for exclusive federal admiralty jurisdiction is absent. Therefore, matters arising from boating accidents on the lake should be left to state courts and state tort law.

In *George v. Beavark, Inc.,* 402 F.2d 977 (8th Cir. 1968), the Eighth Circuit held that float fishing (guides and fishing boats for hire) was not such a commercial activity which would support a finding that the

White River in Arkansas was navigable for the purpose of federal admiralty jurisdiction. The court noted that there was "no showing or claim that persons or regional products were ever transported commercially on the river." Float fishing, standing alone, did not cause the river to be within federal admiralty jurisdiction, "absent any evidence of a channel of useful purpose to trade or commerce."

In support of its motion to dismiss, the Government offers the affidavit of Lt. Cmdr. C. G. Hill, Executive Officer of the U. S. Coast Guard Marine Safety Office whose area of responsibility includes the Lake of the Ozarks. He states that the lake is located wholly within the State of Missouri and is without a navigable outlet; that there are no documented vessels on the lake engaged in interstate or foreign maritime commerce, and that there are no cargo carrying vessels documented for use on the lake. He further states that there are eight small passenger vessels certified by the Coast Guard for use as sightseeing or excursion vessels; that these vessels take on passengers at the dock, take them on sightseeing/excursion trips, and return them to the same dock; that none of the vessels engage in any type of ferry or transportation operation; that the normal season of operation is April through September or October; and that none of the vessels are engaged in interstate or foreign maritime commerce.

The Government's argument is compelling. The record indicates that the Lake of the Ozarks is not now a "channel of useful purpose to trade or commerce," *George v. Beavark, supra,* and that because of its location and situation is not reasonably susceptible of such use nor likely to be so used in the future.[1] If this Court were writing on a clean slate, it would choose to adopt the jurisdictional analysis in *Adams v. Montana Power.* However, this Court is constrained to follow the direct holding of the Eighth Circuit in *Loc-Wood Boat & Motors,*

*supra,* that the Lake of the Ozarks is within the admiralty jurisdiction of the federal courts. It may be, as the Government argues, that the court of appeals will reconsider its position if presented the question again. That prerogative lies with the Eighth Circuit; it is not a proper function of this Court. Accordingly, for the reason set out above, the motion of the United States to dismiss for lack of subject matter jurisdiction is hereby denied.

IT IS SO ORDERED.

---

1. This Court would find the small passenger vessels used for sightseeing/excursion purposes not to be "commercial navigation" as would support exclusive federal admiralty jurisdiction over the Lake of the Ozarks. *See Shogry v. Lewis,* 225 F.Supp. 741 (W.D.Pa. 1964).