Sylvester LAWRENCE, Appellee,

v.

NORFOLK DREDGING COMPANY, a Virginia corporation, Appellant.

No. 8914.

United States Court of Appeals Fourth Circuit.

Argued March 29, 1963.

Decided July 16, 1963.

Francis N. Crenshaw and Guilford D. Ware, Norfolk, Va. (Baird, Crenshaw & Ware, Norfolk, Va., on brief), for appellant.

Wilfred R. Lorry, Philadelphia, Pa. (Sidney H. Kelsey, Norfolk, Va., Abraham E. Freedman, Charles Sovel, and Freedman, Landy & Lorry, Philadelphia, Pa., on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and PREYER, District Judge.

BOREMAN, Circuit Judge.

This case was instituted by Sylvester Lawrence, plaintiff, under the provisions of the Jones Act (46 U.S.C. § 688) [1] to recover damages for personal injuries sustained by him in an accident. The jury rendered its verdict in favor of the plaintiff in the amount of $100,000 and judgment thereon was entered after the motion of defendant, Norfolk Dredging Company, Inc., to set aside the verdict or to grant a new trial had been denied. On this appeal only two questions are presented: (1) Whether the trial judge erred in ruling, as a matter of law, that plaintiff was a member of a crew of a vessel; and (2) whether the verdict is excessive.

The uncontradicted and undisputed evidence disclosed that at the time of the accident the dredge "Talcott," owned by the defendant, was engaged in dredging operations in navigable waters in Oregon Inlet off Manteo, North Carolina. The dredge and its auxiliary vessels, including a derrick barge, an equipment barge, a tug and other vessels of the flotilla, had arrived in the area from Norfolk, Virginia, the day before the accident. The "Talcott" was equipped with sleeping accommodations for those aboard, the men ate their meals thereon and otherwise lived there when they were not working.

For ten or twelve years plaintiff had been employed by the defendant on various vessels. He started as a deck hand and was promoted to a deck foreman or "deck captain." He had been employed on the "Talcott" as deck captain for two or three years prior to the accident. On September 3, 1957, while working on one of the auxiliary vessels, a derrick barge, plaintiff was seriously injured when a 1500-pound anchor fell and landed across his legs.

Any question as to whether the "Talcott" was a *vessel* was removed from the case by the admission of defense counsel at the bar of the court. Therefore, the first primary inquiry is whether plaintiff was, at the time of the injury, a seaman and a member of the crew of the "Talcott" and so entitled to maintain his action under the Jones Act, or whether he was a harbor worker whose exclusive remedy was under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.), hereinafter referred to as the Compensation Act.

Plaintiff's status as a maritime worker is clear and were it not for the Compensation Act, his right to a Jones Act remedy would not be open to question. The Compensation Act covers injuries "occurring upon the navigable waters of the United States" but excludes from its coverage a "member of a crew of any vessel" (33 U.S.C. § 903(a) (1)). Thus the focal point of inquiry is whether the plaintiff falls within this excluded class.

During the period from September 3, 1957, the date of the accident, to April of 1959, when plaintiff was able to return to work, all of his medical expenses were caused to be paid by defendant, and the maximum compensation benefits provided by the Compensation Act were paid to him. After working nearly two years as a deck captain following his return to work in April 1959, plaintiff brought this action and defendant moved to dismiss on the ground that plaintiff was not a seaman and that he had elected to receive benefits under the Compensation Act to the exclusion of the Jones Act. In an opinion reported in 194 F. Supp. 484, the District Court rejected this contention but expressly withheld any determination as to whether plain-

1. 46 U.S.C. § 688 in pertinent part is as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * *."

tiff was a seaman or harbor worker, reserving that for the jury. At the conclusion of the evidence and at the insistence of plaintiff's counsel, the trial court instructed the jury, as a matter of law, that the dredge was a vessel and plaintiff was a seaman member of its crew. It appears possible, however, from certain portions of the record that the court was not entirely free from doubt as to the correctness of its ruling which was based upon his conclusion that "there is just no material point of fact that is in dispute" and "it appears to me that these uncontroverted facts now resolve themselves into a question of law."

## Was PLAINTIFF'S Status as a "MEMBER Of A Crew" A Question for Jury Determination?

On the first question the dredging company contends that although the facts which disclose the nature of plaintiff's duties at the time of the injury are undisputed, the ultimate determination as to whether Lawrence was a "member of the crew of a vessel" should have been left to the jury on the theory that the inferences which could properly be drawn from established facts are such that reasonable men could differ.

During the entire course of his employment by defendant, plaintiff was working mainly with the deck department on various vessels. His duties as "deck captain" consisted primarily of handling and maintaining in proper condition the earth conveying pipelines used by the dredge to move earth from the bottom of the harbor to the shore line which is the primary function of such a vessel. His duties also included tending the lines of the dredge and its various auxiliary vessels and the posting of necessary lights. He slept and ate aboard the dredge, sometimes remaining aboard for four to six weeks at a time, although when he was not on watch or engaged in actual work, he was perfectly free to go and come as he pleased.

In urging that plaintiff's employment status could reasonably have been factually determined to have been that of an ordinary "laborer" rather than a member of the crew of the vessel, the defendant employer points to the following facts: Plaintiff was paid on an hourly basis; after working hours he could go and come as he pleased; he did not go to seamen's school and did not have seamen's papers; his primary duty was to handle and care for the conveying pipelines; the dredge to which he was attached had no motive power, no wheel, no rudder, no running lights, never ventured into the ocean and was operated without the maintenance of a log; in connection with his work he sometimes assisted in building up land areas for highways and other construction, assisted in maintaining levees, spillways and pontoon lines; and, when he ate and slept aboard the dredge, there was deducted from his wages the sum of one dollar a day for his food and for the use of towels and sheets.

The company relies most heavily upon the doctrine, announced by two important Supreme Court decisions, that the determination of the status of an employee as a member of a crew or otherwise turns on questions of fact and that even though the facts pertaining to the determination are undisputed, the interpretation of the facts is normally the province of the trier of the facts. Senko v. La Crosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). In the Senko decision the doctrine of Bassett was explained to the effect that such determination is ordinarily for the finder of fact, meaning that "juries have the same discretion they have in finding negligence or any other fact." The Court further amplifies the doctrine by stating in Senko, 352 U.S. at 374, 77 S.Ct. at 417, "The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate." With this general doctrine we are in full agreement; however, as this court has recently declared, " * *. [T]hat is not to say that there is a

question of fact respecting the Jones Act remedy when the admitted facts leave no reasonable room for conflicting ultimate inferences." See Hill v. Diamond, 311 F.2d 789, 793 (4th Cir. 1962).

We feel that our disposition of this question in the instant case is controlled by the Supreme Court decision in Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 430 (1944), wherein the Court held that as a matter of law the injured employee was a member of the crew. The only apparent difference between Norton and this case before us is that in the former the injured employee received his compensation on a monthly rather than on an hourly basis and performed somewhat less varied duties. There, as here, the vessel was a barge, had no motive power, the employee bought his own meals, had little experience as a seaman and had only incidental navigational duties such as handling lines, responding to the whistles of tugs and posting navigational lights and signals, while his main duties consisted of taking general care of the vessel. Of course, the facts that the "Talcott" had no motive power, no wheel, no rudder, etc., are not strictly pertinent here since it is not disputed that the dredge was a "vessel."

The dredging company attempts to distinguish the Norton case from the instant case on the theory that the claimant in Norton was aboard exclusively for navigational purposes; but we are told by the Court in that decision that navigation, in the broad sense in which it is used in these cases, is not confined strictly to the actual navigating or movement of the vessel but "embraces duties essential for other purposes of the vessel," and that a person who at all times contributes to the labors about the operation and welfare of the vessel when she is upon a voyage is engaged in "navigation" and must be considered a member of the crew. It is significant to note that in Norton the Court was not sustaining a verdict of a fact finder but was affirming the Circuit Court's reversal of the action of the District Court in upholding a finding

of fact, 3 Cir., 137 F.2d 57; D.C., 45 F.Supp. 835; also that the decision in Bassett, supra, was expressly considered.

In Daffin v. Pape, 170 F.2d 622 (5th Cir. 1948), the court held that the claimant was, as a matter of law, a member of the crew. The shipowner relied upon the Bassett case, the claimant upon Norton. Referring to the claimant, the court concluded, 170 F.2d at 625:

"Daffin was on board the yacht to aid in her navigation; his labors contributed to the accomplishment of the main objectives toward which the vessel was engaged. That he had not signed articles and did not eat and sleep aboard the vessel when it was in port, was of no consequence.

"The duties Daffin was performing when he was injured were duties ordinarily performed by a member of the crew, and we think, as did the judge below, that he must be considered, in law, to have been a member of the Vigilant's crew."

See, also, Tucker v. Branham, 151 F.2d 96 (3d Cir. 1945), where the facts were undisputed and the court held, as a matter of law, that the plaintiff was a member of the crew.

In the instant case plaintiff's duties were connected with and contributed to the operation and welfare of the dredge when it was engaged in its assigned function. To paraphrase the language of the Court in the Norton case, 321 U.S. at 573, 64 S.Ct. at 751, we conclude that only by a distorted definition of the word "crew" as used in the Compensation Act could Lawrence be restricted to the remedy which that Act affords and be excluded from recovery under the Jones Act or be denied relief in admiralty.

We conclude that the District Court did not err in holding, as a matter of law, that plaintiff was a member of the crew.

## WAS THE VERDICT EXCESSIVE?

█ We find no merit in the defendant's second contention that the verdict was excessive. The evidence reveals that

although the initial injury consisted principally of a fracture of the femur, complications from the fracture and its treatment produced serious, painful and permanently disabling conditions. The treatment required open reduction involving two surgical procedures during which an intermedullary rod was inserted into the fractured portions of the bone and subsequently removed. The testimony reveals that these procedures caused a great deal of pain and suffering. Complicating the injury and its treatment, plaintiff developed a pulmonary infarct resulting from a thrombophlebitis in the affected leg. The pulmonary infarct resulted in permanent and somewhat disabling scarring of the lung tissue; and the thrombophlebitis has left him with a postphlebitic leg, a permanent, painful condition which the medical evidence reveals will grow progressively worse, and which is adversely affected by the performance of manual labor, the only type of work for which the evidence shows Lawrence to be equipped, he having had only a sixth grade education and no working experience in any other field of endeavor. Furthermore, he was hospitalized for eight months and continued thereafter under a doctor's care for a period of almost four years.

The fact that Lawrence has earned as much or more since his return to work at the same job following the accident as he had earned prior to the accident is strenuously urged as a circumstance to support the contention that the verdict was excessive. However, a comparison of earnings before and after the injuries is not a particularly significant or controlling consideration where there was evidence before the jury to support the conclusion that, under circumstances such as these, the injuries will adversely affect plaintiff's future employment possibilities. See Wiles v. New York, Chicago & St. Louis Railroad Co., 283 F.2d 328 (3d Cir. 1960), cert. denied, 364 U.S. 900, 81 S.Ct. 232, 5 L. Ed.2d 193; Faudree v. Iron City Sand & Gravel Co., 201 F.Supp. 447 (W.D. Pa.1962), aff'd, 315 F.2d 647 (3d Cir.

1963). We agree with the plaintiff's assertion that the evidence respecting his injuries could have justified a verdict even larger in amount than the one rendered.

Affirmed.