**Raymond RAMOS, Plaintiff,**

v.

**UNIVERSAL DREDGING CORP.,
Defendant.**

**Civ. No. 77–314.**

United States District Court,
D. Hawaii.

Sept. 17, 1982.

Christopher P. McKenzie, Honolulu, Hawaii, for plaintiff.

Terence J. O'Toole, Phillip L. Deaver, Carlsmith, Carlsmith, Wichman & Case, Honolulu, Hawaii, for defendant.

## DECISION

FONG, District Judge.

The essential facts in this case are not disputed by the parties. Plaintiff Ramos

was hired by defendant Universal Dredging on or about February, 1975, when he was dispatched by Local 3 of the Operating Engineers Union. He was hired as a deckhand, and was initially assigned to the dredge SAN DIEGO. In August of 1975, he was assigned to the dredge EXPLORER, where he worked continuously until he was injured.

The EXPLORER was being used in connection with the construction of a reef runway which was to be part of the Honolulu International Airport. The dredge cut soil, rocks and coral from the ocean floor and pumped the material to the levee on shore through pipes extending over the surface of the water.

The dredge was held stationary by two anchors out forward of the dredge and two metal columns lowered to the ocean floor at the stern of the dredge. The dredge had no engine and was propelled by raising the metal columns ("spuds") and pulling the dredge forward by the anchor lines. This was done several times a day as the coral was cut. Twice a week, an anchor scow moved the anchor further out in front.

Ramos worked on one of the three eight-hour shifts on board the EXPLORER, returning home at night. His main duties were to maintain the pipes, and also work the anchors as needed. He also performed general maintenance of the dredge, helped repair the pumping engines, and checked to see that the dredge lights were operational.

On September 29, 1975, while the dredge was undergoing repairs to its pump engine, Ramos allegedly slipped on the stairway of the engine room of the EXPLORER while carrying a 250-pound engine part. As a result of the accident, Ramos suffered injuries to the right side of his back for which he is seeking compensation under the Jones Act.

Ramos previously filed a claim under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), and it was determined by an administrative law judge that the coverage under the LHWCA extended to Ramos. This determination was reversed by the Benefits Review Board, which in turn was reversed and remanded by the Ninth Circuit. 653 F.2d 1353.

Ramos is now before this court with a motion for summary judgment, seeking to have him declared to be a "seaman" within the Jones Act as a matter of law. Universal has filed its cross motion for continuance of the trial and the hearing on the motion for summary judgment, seeking to have this matter continued until the Benefits Review Board has had the opportunity to review the administrative law judge's decision in light of the Ninth Circuit's ruling. Ramos has in turn filed a further motion to strike all references to the LHWCA.

For the reasons stated below, Ramos' motion for summary judgment is granted and the cross motion to continue, as well as the motion to strike are denied.

DISCUSSION:

■ At the outset, it should be noted that the issue of whether a claimant is a "seaman" is normally a matter for a finder of fact to determine after trial. *Senko v. La Crosse Dredging Co.*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1956), *reh. den.*, 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 (1956). The matter may be taken from the trier of fact, however, where the record demonstrates that reasonable persons could not draw conflicting inferences which might lead to a different conclusion. *Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir. 1979); *Hill v. Diamond*, 311 F.2d 789 (6th Cir. 1962); *Producers Drilling Co. v. Gray*, 361 F.2d 432 (5th Cir. 1966). We turn now to a consideration of plaintiff's Motion for Summary Judgment.

*Is the dredge a "Vessel"?*

■ The term "vessel", as it is used in the context of the Jones Act, is very liberally construed. A "vessel", then, may include special purpose structures not usually employed as a means of transport but designed to float on water. *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir. 1959). A review of the authorities very quickly makes it clear that a dredge such as the one

in the instant case is a "vessel" within the meaning of the Jones Act. *Senko v. La-Crosse Dredging Corp., supra; Wilkes v. Mississippi River Sand & Gravel Co.,* 202 F.2d 383 (6th Cir. 1953); *Lawrence v. Norfolk Dredging Co.,* 319 F.2d 805 (4th Cir. 1963), *cert. den.,* 375 U.S. 952, 84 S.Ct. 443, 11 L.Ed.2d 313 (1963).

While not disputing the general proposition stated above, defendant argues that this "special purpose doctrine" does not apply to vessels undergoing significant repairs. Defendant, however, does not cite to any legal authority in support of this proposition, and a review of the authorities in fact indicate that the issue of whether a vessel is undergoing significant repairs is more properly addressed to the question of whether the vessel is "in navigation" under the three prong test discussed below.

### Is the plaintiff a "Seaman"?

■ The classic test in this area is a three pronged one: (i) the vessel on which the claimant is employed must be in navigation, (ii) there must be a more or less permanent connection with the vessel, and (iii) the claimant must be aboard primarily to aid in navigation. *Bodden v. Coordinated Caribbean Trans., Inc.,* 369 F.2d 273 (5th Cir. 1966); *see, Bullis v. Twentieth Century-Fox Film Corp.,* 474 F.2d 392 (9th Cir. 1973).

### A. Vessel in Navigation.

■ This prong of the test is quite liberally applied, to the point where the vessel does not have to be actually plying the waters for it to be "in navigation". *Butler v. Whiteman,* 356 U.S. 271, 78 S.Ct. 735, 2 L.Ed.2d 754 (1958) (Held, a jury question as to whether a tug was "in navigation" when tug was lashed to a barge which was in turn moored to a wharf); *Senko v. La Crosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), *reh. den.,* 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 (1957):

> If [petitioner] were a member [of the dredge's crew] during travel, he would not necessarily lack that status during anchorage. Even a transoceanic liner may be confined to berth for lengthy periods, and while the ship is kept in repair by its "crew". There can be no doubt that a member of its crew would be covered by the Jones Act during this period, even though the ship was never in transit during his employment. In short, the duties of a man during a vessel's travel are relevant in determining whether he is a "member of a crew" while the vessel is anchored. Thus, the fact that this dredge was connected to the shore cannot be controlling.

*Id.* 352 U.S. at 373, 77 S.Ct. at 417.

Likewise, the mere fact that the vessel is undergoing temporary repairs will not take it out of navigation. *Doucet v. Wheless Drilling Co.,* 467 F.2d 336 (5th Cir. 1972); *Bodden .v. Coordinated Caribbean Transport, Inc., supra.*

■ In the instant case, it appears that the dredge's pump engine was being repaired at the time the injury occurred. Defendant therefore argues that this took the dredge out of navigation.

In *Doucet, supra,* a submersible drilling barge engaged in drilling operations was damaged in a hurricane. Most of the damage was to the equipment and not to the barge itself. Nevertheless, the barge was towed to shore and drawn up to the bank for repairs. The plaintiff in that suit, who was a member of the drilling crew, was injured while engaged in making repairs to the barge on the first day the repairs commenced. The district court there granted summary judgment in favor of the plaintiff on the question of whether he was a member of a crew of a vessel in navigation under the Jones Act.

The Fifth Circuit affirmed the District Court, noting that the barge was still partially afloat, the repairs were chiefly to the drilling equipment, the time involved was short (Sept. 16–29), and the vessel quickly returned to its drilling function as soon as a job contract was obtained although prior to the completion of repairs. 467 F.2d at 339.

The instant case is indistinguishable from *Doucet.* The dredge was afloat in Keehi Lagoon, the repairs being conducted were

to its pumping engine, the time involved was relatively short ("from September 25 to early October"—Defendant's memorandum in opposition to plaintiff's motion for summary judgment), the plaintiff was involved in making the repairs to the dredge, and the dredge returned to its function as soon as the repairs were complete.

### B. *Primarily to Aid Navigation.*

The Plaintiff argues that this test is liberally construed by the courts, and that this test is met if the worker is found to have "contributed to the function of the vessel. The Defendant proposes a more narrow reading of this prong of the test.

It is clear that the term "seaman" is not limited only to those who "hand, reef and steer". *Norton v. Warner Co.,* 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931 (1944). In *Robison, supra,* the Fifth Circuit, citing a First Circuit case (*Carumbao v. Cape Cod S.S. Co.,* 123 F.2d 991 (1st Cir. 1941)), noted that even a cook or an engineer can be considered "in aiding navigation". The court further noted other cases that have extended the "in aid of navigation" test to oil field workers aboard a submersible drilling barge (*Gianfala v. Texas Co.,* 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed.2d 775 (1955)), a handyman on a dredge anchored to shore (*Senko v. La Crosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), *reh. den.,* 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724), a pile driver assigned to a radar station tower being constructed at sea (*Grimes v. Raymond Concrete Pile Co.,* 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958)), an employee doing odd jobs around his employer's wharf (*Butler v. Whiteman,* 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958)), a fireman on a floating derrick (*Summerlin v. Massman Const. Co.,* 199 F.2d 715 (4th Cir. 1952)), laborers aboard barges collecting gravel pumped up from a river bottom (*Wilkes v. Mississippi River Sand & Gravel Co.,* 202 F.2d 383 (6th Cir. 1953)), and deckhands aboard a dredge (*Gahagan Const. Corp. v. Armao,* 165 F.2d 301 (1st Cir. 1948)).

The court, noting that the plaintiffs in the above cited cases had nothing to do with the operations or welfare of the vessel as a means of transportation in water, and further noting that they were not members of a ship's company in the same sense as a ship's cook or carpenter are necessary or appropriate members of a ship's complement, concluded that they served in a capacity that *contributed to the accomplishment of its mission.* 266 F.2d at 776. The court likened those plaintiffs to a surgeon that serves as member of a crew of a floating hospital.

The court therefore concluded that this aspect of the test is met if the workman shows that the capacity in which he was employed or the duties which he performed contributed:

a.  to the function of the vessel, or

b.  to the the the accomplishment of its mission, or

c.  to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for future trips.

Most courts, including the Ninth Circuit, appear to have accepted *Robison's* liberal interpretation of the "in aid of navigation" requirement. *See, Buna v. Pacific Far East Line Inc.,* 441 F.Supp. 1360 (N.D.Cal.1977); *Bullis v. Twentieth-Fox Film Corp.,* 474 F.2d 392, n.10 (9th Cir. 1973); *Baker v. Pacific Far East Lines, Inc.,* 451 F.Supp. 84 (N.D.Cal.1978); *Lawrence v. Norfolk Dredging Co.,* 319 F.2d 805 (4th Cir. 1963). *Contra, Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. den.,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

If we apply this more liberal reading of this prong of the test, it would appear to be quite clear that the plaintiff here was engaged in duties which contributed to the function of the vessel or the accomplishment of its mission. It is undisputed that the dredge here was used to cut soil, rocks and coral from the ocean floor and pump the material through pipes to the levee on shore. It is also undisputed that while the plaintiff's main responsibility was the main-

tenance of the pipes, he had additional duties which included keeping debris out of the filter (the "stone box"), protecting the pump, checking the fuel level, general maintenance, cleaning and painting the dredge, splicing wire, standing watch, helping to repair the pumps, and working with the anchor scow when the dredge was moved.

The plaintiff's work clearly contributed to the function of the dredge and accomplishment of its mission. The dredge had no other mission than to dredge the ocean floor and pump the materials to the levee, and plaintiff's duties served were primarily in aid of that mission. *Noble Drilling Corp. v. Smith,* 412 F.2d 952 (5th Cir. 1969), *cert. den.,* 396 U.S. 906, 90 S.Ct. 221, 24 L.Ed.2d 182 (1969); *Lawrence v. Norfolk Dredging Co.,* 319 F.2d 805 (4th Cir. 1963) (dredge worker whose primary function consisted of handling and maintaining earth conveying pipelines held as a matter of law to be a "crew member" entitled to Jones Act recovery).

Defendant does not dispute the above facts; its arguments in this regard rely instead on the assertion that plaintiff's duties, strictly speaking, did not "aid navigation" and also that, since the vessel was not "in" navigation at the time of the accident, the plaintiff being on board was not in aid of any navigation. As seen above, these arguments have no merit.

### C. *Permanent Connection to the Vessel.*

■ This criterion is designed to exclude associations with vessels that are merely transitory, sporadic, fortuitous, or merely incidental to the plaintiff's shore-based employment. *See, Holland v. Allied Structural Steel Co.,* 539 F.2d 476 (5th Cir. 1976) (steel connector who worked on the superstructure of a bridge held not a seaman, where evidence showed no more than a transitory contact with the water, when plaintiff spent a portion of his time unloading steel from barges anchored to the river bank); *Brown v. ITT Rayonier,* 497 F.2d 234 (5th Cir. 1974) (principal duties on land, injuries sustained in work-related three

hour boat ride, held, plaintiff not a seaman).

To meet this part of the *Robison* test, the plaintiff must show that he "performed a substantial part of his work on the vessel". This is accomplished if he shows that he "performed a significant part of his work aboard the ship with at least some degree of regularity". *Holland, supra,* 539 F.2d at 484.

■ In the instant case, it would appear that there is no real dispute that all of the plaintiff's work was performed on the dredge. He did not appear to have any other duties that required him to be on land during the relevant period of his employment; it is further undisputed that he worked exclusively on the dredge EXPLORER from August, 1975 to September 29, 1975, when the accident took place. It seems clear, therefore, that no reasonable jury would find that he did not "perform a significant part of his work aboard the vessel". The court finds for the plaintiff as a matter of law on this point.

The test is alternatively met if a relationship exists between the claimant and the specific vessel or identifiable group of vessels, and the relationship is substantial in both point and time, not spasmodic. *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir. 1981).

Again, this test is clearly met. Ramos' relationship was to a specific vessel, and since he worked exclusively on the dredge EXPLORER from August, 1975 until he was injured, there can be no question that his connection to the dredge was substantial in both point and time.

■ Defendant Universal's remaining argument, that Ramos is collaterally estopped from seeking to be determined a "seaman" within the Jones Act because of the prior determination of the administrative law judge, is misplaced. The doctrine of collateral estoppel applies only to "final judgments", *American Nat. Ins. Co. v. Yee Lim Shee,* 104 F.2d 688, 692 (9th Cir. 1939), *cert. den.,* 308 U.S. 592, 60 S.Ct. 122, 84 L.Ed. 495 (1939), and the decision of the

administrative law judge, having been reversed by the Benefits Review Board, cannot be said to be binding on this court. *See,* 1B Moore's Fed.Prac. ¶ 0.416[2]. Further, even if the decision is binding at all, it is binding only as to the issue of whether Ramos is a "member of a crew", which the administrative law judge concluded involved a different test than the question of whether Ramos was a "seaman". *See, Finneman v. McCormick,* 499 F.2d 212 (10th Cir. 1974), *cert. den.,* 419 U.S. 1049, 95 S.Ct. 624, 42 L.Ed.2d 644 (1974); 1B Moore's Fed. Prac. ¶ 0.443[2].

Moreover, aside from whether the administrative law judge was correct in applying a different legal standard to determine Ramos' status as a "member of a crew", this court is bound by the decision in *Norton v. Warner, supra,* where the Supreme Court found that the LHWCA was intended to apply to those mainly employed in "loading, unloading, refitting, and repairing ships". 321 U.S. at 570, 64 S.Ct. at 750. Plaintiff Ramos here does not fall within that class of persons.

Defendant's motion to continue the trial and the hearing on plaintiff's motion for summary judgment is therefore denied. Since this court did not consider the findings of the administrative law judge below in reaching this decision, plaintiff's motion to strike is denied as moot.

Accordingly, it is therefore

ORDERED, that Plaintiff's Motion for Summary Judgment is hereby GRANTED;

IT IS FURTHER ORDERED, that Defendant's Motion For Continuance of Trial and The Hearing on Motion for Summary Judgment, and Plaintiff's Motion to Strike are hereby DENIED.