**Philip STANFIELD, Plaintiff–Appellant,**

v.

**SHELLMAKER, INC., Defendant–Appellee.**

**No. 87–2920.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1988.

Decided March 9, 1989.

**522**

John R. Hillsman, McGuinn, Hillsman &
Palesky, San Francisco, Cal., for plaintiff-
appellant.

Gary A. Angel, San Francisco, Cal., for
defendant-appellee.

Before CHOY, CANBY and NORRIS,
Circuit Judges.

CANBY, Circuit Judge:

Phillip Stanfield appeals from a final
judgment in the district court following a
bench trial of his claims under the Jones
Act, 46 U.S.C.App. § 688. Stanfield con-
tends that the district court erred in find-
ing as a matter of law that he was not a
"seaman" under the Jones Act because he
was employed on a vessel that was not
operating on navigable waters. He further
contends that the district court erred in
finding that the "fleet seaman" doctrine
did not cure his problems arising from the
location of the vessel at the time of the
injury. We agree with the district court
that the working location of the vessel on
which Stanfield was assigned takes him out
of the reach of the Jones Act. We there-
fore affirm.

FACTUAL BACKGROUND

Phillip Stanfield worked for defendant
Shellmaker on a project-by-project basis
from February 26, 1983, until his injuries
precluded further active dredging work in
March of 1984. Stanfield worked as a
dredge surveyor, designing dredge cuts or
excavations, plotting the dredge's stations
or positions, and calculating her daily pro-
duction. When a dredging job was com-
pleted, Stanfield was laid off, to await be-
ing rehired for the next project.

The dredge to which Stanfield was as-
signed at the time of his injury was the
*Traveler.* Like all of defendant's dredges,
it had no motive power of its own, and had
to be moved either by tugs, or by pulling
on its own anchors with a winch. The
*Traveler* was licensed by the Coast Guard
for coastwise operation, and had been so
employed at times prior to the assignment
in question here. The *Traveler* was also
capable of being disassembled and trans-
ported overland by truck.

At the time of the injury, the *Traveler*
was on an assignment to which it had been
transported by truck. It was dredging the
South Fork of the Kings River, a landlock-
ed artificial waterway used for irrigation
purposes. The object of the dredging was
to reverse the flow of the South Fork to aid
in irrigation. The South Fork lies wholly
within the State of California and is not
navigable.

Stanfield was assigned to work with the
*Traveler* beginning on July 30, 1983. He
lived in a motel and drove a truck to the
South Fork, where he did his surveying.
On August 4, 1983, while in his small sur-
vey boat on the South Fork, he went to aid

a crewman in a skiff, who was having difficulty moving one of the dredge's anchors. The anchors had not been holding properly. Stanfield assisted the crewman, but injured his back in doing so. The injury was not immediately disabling, but became progressively worse, causing Stanfield to leave the project on September 29, 1983. He reported back to work for defendant on October 17, 1983 and was assigned to a different project, where he worked until his injury caused him to stop in early March, 1984. Unable to continue his previous type of work, Stanfield eventually found employment as a dredge consultant, at a considerably lower rate of pay than that which he had previously enjoyed.

Stanfield subsequently filed this action in district court, seeking compensation for unseaworthiness and for negligence under the Jones Act. The district court found that Stanfield's injury had been caused by Shellmaker's negligence, and that Stanfield had acted reasonably at the time of his injury and in his subsequent attempts to mitigate damages by finding other employment. Nonetheless, the district court denied recovery under the Jones Act because of its finding that at the time of his injury Stanfield was permanently assigned to a vessel that was operating in non-navigable waters.

## DISCUSSION

The Jones Act provides an action for damages for "[a]ny *seaman* who shall suffer personal injury in the course of his employment." 46 U.S.C.App. § 688 (emphasis added). We have said that status as a seaman depends upon three factors:

(1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation.

*Estate of Wenzel v. Seaward Marine Services, Inc.*, 709 F.2d 1326, 1327 (9th Cir. 1983); *Omar v. Sea–Land Service, Inc.*, 813 F.2d 986, 988 (9th Cir.1987). The district court held that Stanfield had failed to satisfy the first element of this test: the *Traveler* was not "in navigation" because it was operating in non-navigable waters.[1]

Stanfield argues that the *Traveler* was "in navigation" because it was afloat and operating, and that there is no requirement that it be on navigable water. He relies in part on *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943), which held that the Jones Act covered a seaman who was injured while ashore on an errand in service of his vessel. The Court stated that "in the course of his employment" must be given as broad a meaning "as the words and the Constitution permit." *Id.* at 39, 63 S.Ct. at 490.

The Supreme Court's ruling in *O'Donnell* did not suggest, however, that the Jones Act was to be cut entirely free from its moorings in admiralty jurisdiction. Quite the contrary:

The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and *its relationship to the operation of the vessel plying in navigable waters.*

*Id.* at 42–43, 63 S.Ct. at 492 (emphasis added). It is true that Congress, in providing a remedy for injuries incurred on shore, went beyond the scope of the traditional maritime tort, which was limited to injuries occurring on navigable water. It did not, however, go beyond the scope of the federal admiralty jurisdiction and abandon all

---

**1.** The parties disagree over the proper standard of review of the district court's ruling. Shellmaker relies on our cases holding that the question of status as a seaman is usually for the jury, *e.g., Estate of Wenzel v. Seaward Marine Services, Inc.*, 709 F.2d 1326, 1328 (9th Cir.1983), and argues that review should be under the clearly erroneous standard. *See Craig v. M/V Peacock,* 760 F.2d 953, 956 (9th Cir.1985). Stanfield ar-

gues, with considerable plausibility, that there are no disputed issues of fact, that seaman status in this case turns on a point of law, *see Omar v. Sea–Land Service, Inc.,* 813 F.2d 986, 988–89 (9th Cir.1987), and that the ruling should be reviewable de novo. We need not decide the question, because we would uphold the district court under either standard.

need for a relationship to navigation and navigable water.[2]

Since the subject matter, the seaman's right to compensation for injuries received in the course of his employment, is one traditionally cognizable in admiralty, the Jones Act, by enlarging the remedy, *did not go beyond modification of the substantive rules of the maritime law well within the scope of the admiralty jurisdiction* whether the vessel, *plying navigable waters*, be engaged in interstate commerce or not.

*Id.* at 43, 63 S.Ct. at 492 (emphasis added). Congress, after all, did not extend the Jones Act remedy to any "worker" injured, only to any "seaman."

It is not surprising, then, that cases describing the reach of the Jones Act regularly assert the requirement that the seaman be serving a ship in navigation on navigable waters. *E.g., Swanson v. Marra Brothers, Inc.,* 328 U.S. 1, 4, 66 S.Ct. 869, 870–71, 90 L.Ed. 1045 (1946); *Caruso v. Sterling Yacht and Shipbuilders, Inc.,* 828 F.2d 14, 15 (11th Cir.1987). It is true that in these cases the navigability of the water was not in issue, but the underlying assumption of the scope of the Jones Act is nevertheless clear. Certainly Stanfield has offered no cases extending the Jones Act to crews assigned to ships in non-navigable water.

Stanfield does point out that a vessel may be "in navigation" even when undergoing temporary repairs in drydock. *See Hawn v. American S.S. Co.,* 107 F.2d 999 (2d Cir.1939). But in that instance the drydock repairs are simply effectuating, though temporarily interrupting, the requisite navigation in navigable waters. In the present case, on the contrary, the *Traveler* was dredging for irrigation purposes on non-navigable waters and was to be so engaged for the months necessary to complete the task. Stanfield's service to the vessel was in aid of that work. Neither the vessel's task nor Stanfield's was preparatory to navigation on navigable waters.

■ Stanfield makes one final argument concerning the *Traveler's* work on the South Fork. Although he concedes that the South Fork was non-navigable in any usual commerce clause sense, he contends that it still might be navigable in the view of admiralty, if only because the *Traveler* floated on it and engaged in commercial activity. We cannot accept that broad view of admiralty jurisdiction. When the Supreme Court ruled that admiralty power was not limited to the high seas and waters subject to the ebb and flow of tide, but extended to navigable inland waters, the Court had the national interest in commercial water-borne traffic in mind. *The Propeller Genesee Chief v. Fitzhugh,* 53 U.S. (How.) 443, 456–57, 13 L.Ed. 1058 (1851). That concern persists to this day. *See Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 674–75, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982) (pleasure boat operators on navigable waters held subject to admiralty jurisdiction because of "potential effect of noncommercial maritime activity on maritime commerce").

Indeed, we have defined a navigable waterway as one "used or susceptible of being used as an artery of commerce.... Commerce for the purpose of admiralty jurisdiction means activities related to the business of shipping." *Adams v. Montana Power Co.,* 528 F.2d 437, 439 (9th Cir.1975); *see Complaint of Paradise Holdings, Inc.,* 795 F.2d 756, 759 (9th Cir.1986) (reaffirming *Adams* rule), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 705 (1986); *Chapman v. United States,* 575 F.2d 147, 149–51 (7th Cir.) (en banc) (adopting *Adams* rule), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978). Other circuits have announced substantially the same criterion of navigability. *Finneseth v. Carter,* 712 F.2d 1041, 1044 (6th Cir.1983) (susceptibility for use as "an interstate highway of commerce"); *Edwards v. Hurtel,* 717 F.2d 1204, 1205 (8th Cir.1983) ("susceptible of use for commercial shipping"). We

---

2. "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C.App. § 740.

adopted our rule in *Adams* in recognition of the fact that the "strong federal interest in fostering commercial maritime activity" outweighed the State's legitimate interest in regulating conduct within its borders. *Adams*, 528 F.2d at 439.

Neither the rule nor the reasoning of *Adams* permits a conclusion that the *Traveler* was operating in navigable water at the time of Stanfield's injury. The South Fork of the Kings River was landlocked and used only for irrigation. There is no suggestion that it was ever used, or ever could be, as an artery of shipping. The dredging done by the *Traveler* for purposes of irrigation was originally to be done by equipment operating on land, but the landowner determine that too much environmental damage would be done to the shore. The *Traveler* was accordingly trucked in to dredge. It subsequently was used for dredging on non-navigable waters in the Napa Sanitation District sewer pond and in a settling pond of the Chevron Chemical Company in Richmond, California. Its activities, commercial though they were, did not convert the South Fork into navigable waters, within the scope of the federal admiralty jurisdiction or the Jones Act.

## FLEET SEAMAN DOCTRINE

Stanfield argues that, despite the *Traveler's* operation in non-navigable waters, he qualifies as a seaman under the "fleet seaman" doctrine as it has been articulated by the Fifth Circuit. *See Braniff v. Jackson Avenue–Gretna Ferry, Inc.*, 280 F.2d 523 (5th Cir.1960); *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir.1977), *reversed on other grounds*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); *Guidry v. Continental Oil Co.*, 640 F.2d 523 (5th Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981).

Even if we assume, without deciding, that the "fleet seaman" doctrine applies in this circuit, it is of no use to Stanfield. That doctrine was devised to ease the requirement that, to be a seaman, the claimant had to be "assigned permanently to a vessel." *Braniff*, 280 F.2d at 526.

The Fifth Circuit decided that a claimant could acquire status as a seaman if he were permanently assigned to a number of vessels for purposes of maintenance and repair. *Id.* at 528.

The Fifth Circuit decisions are inapplicable to Stanfield for two reasons. First, the "fleet seaman" doctrine presupposes permanent assignment to a number of vessels plying navigable waters. It does not encompass injury arising from service to a vessel in non-navigable waters. Second, Stanfield was permanently assigned to the *Traveler* at the time of his injury. He was serving no other vessel. The fact that, in different periods of employment, he worked on other vessels of Shellmaker that were located on navigable waters, does not alter the case before us. There is no difficulty herein finding a "more or less permanent connection" with a vessel. *Estate of Wenzel*, 709 F.2d at 1327. The connection is to the vessel *Traveler*, and it was not in navigation on navigable waters at the time of Stanfield's injury.

## CONCLUSION

The judgment of the district court is AFFIRMED.