Niel **KJAR**, Plaintiff,

v.

**AMERICAN DIVERS, INC.;** American Workboats, Inc.; Chevron Hawaii, Inc., Defendants.

**Civ. No. 90–00423 HMF.**

United States District Court, D. Hawai'i.

June 20, 1991.

Ashford & · Nakamura, George Ashford, Jr., Lee Nakamura, Bryan Ho, Jodie Roeca, Honolulu, HI, and McGuinn Hillsman & Palefsky, John Hillsman, San Francisco, CA, for plaintiff.

Reinwald, O'Connor, Marrack, Hoskins & Playdon, George W. Playdon and Patricia K. Wall, Honolulu, HI, for American Divers, Inc.

Kelly Cox Wootton Welch Gill & Sherburne, Richard C. Wootton, Tia M. Welch, San Francisco, CA, and Alcantara & Frame, Leonard F. Alcantara and Cynthia A. Farias, Honolulu, HI, for Dynamite, Inc. dba American Workboats, Inc.

Alston, Hunt, Floyd & Img, William S. Hunt and Peter C. Hsieh, Honolulu, HI, for Chevron, Inc.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

FONG, District Judge.

### INTRODUCTION

On June 17, 1991, the court held a hearing on the plaintiff's motion for partial summary judgment, filed on April 24, 1991. Defendants American Divers, Inc. and Dynamite, Inc. dba American Workboats, Inc. filed a memorandum in opposition on May 30, 1991 and the plaintiff filed a reply memorandum on June 7, 1991.

### BACKGROUND

Plaintiff Niel Kjar was a commercial diver in the part-time employ of defendant American Divers, Inc. (ADI) off and on since 1981. In August and September, 1988, the plaintiff was working for ADI on its project to replace the submarine hose from which tankers load and unload at defendant Chevron Hawaii, Inc. (Chevron)'s Barber's Point oil refinery. The water at the site is approximately 65 feet deep. The project was manned from the tugboat Holokai which left from Pier 14 each morning for Barber's Point, anchored off Barbers Point, and acted as dive station for the hose replacement work performed under the ocean. The Holokai was owned by defendant Dynamite, Inc. dba American Workboats, Inc. (American Workboats).[1]

On September 13, 1988, the plaintiff was injured while on a dive for the Chevron hose change project. The cause of the injury is the subject of the instant suit. Because of the accident, the plaintiff suffered from Type II, central nervous system decompression sickness, otherwise known as "the bends,"[2] and is now permanently disqualified from diving.

The Jones Act protects "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 App.U.S.C. § 688. The plaintiff's motion for partial summary judgment requests that the court find, as a matter of law, that the plaintiff was employed by defendant ADI as a "seaman" within the meaning of the Jones Act at all times material to the case at hand.

### DISCUSSION

I.  *Applicable Law*

A.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence

---

1.  Both ADI and American Workboats are owned in 50/50 shares by Scott Vuillemot and Robert Shanazarian, but each is a separate corporate entity.

2.  Type II, central nervous system decompression sickness is caused by the expansion of inert blood gas absorbed under pressure; as a result of this sickness, the plaintiff suffers, among other things, residual bladder and bowel control problems.

tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectual Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468, (9th Cir.1987), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the non-moving party. *Id.*

## B.  Seaman Status Three–Pronged Test

The classic test to determine "seaman" status was applied by this court in *Ramos v. Universal Dredging Corp.*, 547 F.Supp. 661 (D.Haw.1982). The court recited the test as follows:

> The classic test in this area is a three pronged one: (i) the vessel on which the claimant is employed must be in navigation, (ii) there must be a more or less permanent connection with the vessel, and (iii) the claimant must be aboard primarily to aid in navigation.

*Id.* at 664. *See also Bullis v. Twentieth Century–Fox Film Corp.*, 474 F.2d 392, 393 (9th Cir.1973).

Another recitation of the "seaman" status factors is found in *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959). The *Robison* test has been widely followed for its second prong which alters the traditional "aid in navigation" requirement. As explained later, the *Robison* version of this requirement was recently adopted by the Supreme Court. The *Robison* court held as follows:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 779.

### 1.  "Vessel . . . in navigation" prong

In *Ramos*, this court noted that "[t]he term 'vessel', as it is used in the context of the Jones Act, is very liberally construed." *Ramos*, 547 F.Supp. at 663. The term may include special purpose structures not usually employed as a means of transport but de-

signed to float on water, as held in *Robison* (above).

This court also described the "in navigation" portion of this first prong as being "quite liberally applied, to the point where the vessel does not have to be actually plying the waters for it to be 'in navigation'." *Ramos*, 547 F.Supp. at 664. The liberal application extends as far as to ships under repair. *Id.*

■ The parties do not dispute that the 67–foot, 600–horsepower-engined tugboat in question, the Holokai, was "a vessel . . . in navigation" at the time of the September 13, 1988 accident in which plaintiff was injured. The tugboat obviously is a vessel even in the traditional sense and was, in fact, in navigation each day in which it performed work at the Barber's Point site. Therefore, the plaintiff clearly meets the first prong of the "seaman" status test.

### 2. Permanent connection prong

In *Ramos*, this court described the purpose of the "permanent connection" prong as follows:

> This criterion is designed to exclude associations with vessels that are merely transitory, sporadic, fortuitous, or merely incidental to the plaintiff's shore-based employment.

The court described the necessary elements of the test as follows:

> To meet this part of the *Robison* test, the plaintiff must show that he "performed a substantial part of his work on the vessel". This is accomplished if he shows that he "performed a significant part of his work aboard the ship with at least some degree of regularity."

> . . . . .

> The test is alternatively met if a relationship exists between the claimant and the specific vessel or identifiable group of vessels, and the relationship is substantial in both point and time, not spasmodic.

*Ramos*, 547 F.Supp. at 666.

This prong is the only one contested by the parties. The parties disagree on two grounds, the first being the applicable time period for which such connection is measured in general, and the second being the connection of this particular plaintiff to vessel-based work during the applicable time period.

Defendants ADI and American Workboats argue that the plaintiff had no permanent connection with the vessel Holokai because in the context of the *overall* employment history of the plaintiff with ADI he participated mostly in land-based dives. The plaintiff, however, argues that its connection with the vessel is to be measured at the time of the accident, not by looking at the sum total of his career with ADI.

If calculating the overall hours with ADI, the court would look to the alternative test described in *Ramos* as a substantial relationship in both point and time with a "specific vessel or *identifiable group of vessels.*" *Ramos*, 547 F.Supp. at 666 (emphasis added), and would not limit itself to the plaintiff's relationship with the Holokai.

Taking the plaintiff's history from September, 1987 through September, 1988 only, the most recent time period in which the plaintiff worked on a fairly continuous basis with ADI, ADI and American Workboats argue that most of the plaintiff's dives were land-based. Part-owner Scott Vuillemot stated in an affidavit that based upon the logs maintained by ADI (Exhibit B to the memorandum in opposition), "[t]he vast majority of the diving which was done by Niel Kjar for American Divers, Inc. in 1987 and 1988 was done from shore and did not involve the use of a vessel."

The plaintiff argues, however, that 80% of his logged hours with ADI from his very first assignment until September, 1988 were on vessel-based assignments and that from September, 1987 until September, 1988, the period which served as the base for ADI and American Workboats' calculation, he spent 41 out of 84 days diving from a vessel and the remainder diving from land-based stations.

Additionally, the plaintiff argues that deep sea divers' work is *inherently* maritime and as such does not necessitate the use of a vessel to establish "seaman" status. *See Wallace v. Oceaneering Int'l*, 727 F.2d 427

(5th Cir.1984). The *Wallace* court wrote as follows:

> A diver's work *necessarily* involves exposure to numerous marine perils, and is inherently maritime because it cannot be done on land.... Moreover, when a diver descends from the surface, braving the darkness, temperature, lack of oxygen, and high pressures, he embarks on a marine voyage in which his body is now the vessel. Before he can complete his assigned task, he must successfully navigate the seas.

*Id.* at 436.[3]

On the Chevron hose change project, the plaintiff logged 47 hours as a diver and 22 hours as a dive tender on the dates of August 22, 23 and 24 as well as September 1, 2, 4 and 13, 1988.

In support of the proposition that the applicable time period is the overall employment record of the plaintiff, ADI and American Workboats cite *Lormand v. Superior Oil Co.*, 845 F.2d 536 (5th Cir.1987) and *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1076 (5th Cir.1986). The court in *Barrett* stated its ruling as follows:

> ... if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined "in the context of his entire employment" with his current employer.

*Id.* at 1076.

However, this court in *Ramos,* 547 F.Supp. at 666, and the Ninth Circuit in *Stanfield v. Shellmaker, Inc.,* 869 F.2d 521, 525 (9th Cir. 1989) clearly applied the connection with the vessel test at the time of the injury.

The court in *Stanfield* affirmed the district court's finding that the plaintiff was not a "seaman" because the vessel to which he was permanently assigned "at the time of his injury" was in non-navigable waters. The court found that "[t]he fact that, in different periods of employment, he worked on other vessels of Shellmaker that were located on navigable waters, does not alter the case before us." *Id.*

Additionally, the Fifth Circuit's contextual test, otherwise known as the Fleet Seaman Doctrine, was developed in order to *expand* coverage to "ambiguous-amphibious maritime worker[s]." *See Braniff v. Jackson Ave.– Gretna Ferry, Inc.,* 280 F.2d 523, 525 (5th Cir.1960). These "ambiguous-amphibious maritime workers" are workers whose regular job duties include activities both on land and on sea, i.e. oil rig welders, sandblasters and mechanics. The court explained its reasoning in *Barrett* as follows:

> What is to be avoided is engrafting upon the statutory classification of a "seaman" a judicial gloss so protean, elusive, or arbitrary as to permit a worker to walk into and out of coverage in the course of his regular duties.

*Barrett,* 781 F.2d at 1075. (citing *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980).

· The *Barrett* court clearly did not intend to create the Fleet Seaman Doctrine for traditional seamen performing traditional duties. The *Barrett* court stated as follows:

> We do not decide whether the same principle governs the crewmember status of the maritime worker who spends virtually all of his time performing traditional seaman's duties—work closely related to the movement of vessels—but does his work on short voyages aboard a large number of vessels.

*Barrett,* 781 F.2d at 1075 n. 13.

■ The Fleet Seaman Doctrine was designed by the Fifth Circuit to broaden coverage under the Jones Act; its purpose is to extend "seaman" status to those performing many land-based duties. Divers are inherently maritime workers—their primary functions are performed under the sea. They are not the intended beneficiaries of the Fleet Seaman Doctrine and to hold them to the overall-context-of-employment standard would defeat the doctrine's expansive purpose. Therefore, the court finds that the applicable time period for "seaman" status is the time of the accident.·

---

**3.** The plaintiff also points out that divers have been given the same rights as "seamen" since at least 1859. *See, e.g. The Highlander,* 12 Fed.Cas. 136 (D.1859) (salvage diver) and *The Murphy Tugs,* 28 F. 429 (E.D.Mich.1886) (salvage diver).

Accordingly, the court need not decide the dispute regarding the classification of plaintiff's hours as land- or shore-based in the context of his overall employment. At the time of the accident, the applicable time period as held by this court, the plaintiff was assigned to the vessel Holokai and performed dives, an inherently maritime activity. Although his assignment to the Holokai was not to last months or years, it was a complete assignment involving a substantial number of logged hours.

■ ADI and American Workboats claim that the particular connection with just the Holokai was not substantial, but do not articulate a reason beyond stating the following:

[d]uring the course of the Chevron assignment, Plaintiff Kjar had no permanent connection with the Holokai. The Holokai simply served as a daily transport to and from a dive site, which for this particular assignment was located offshore of Barber's Point.

The fact that the plaintiff did not eat or sleep on the Holokai does not detract from his substantial work on the vessel. Additionally, the Holokai admittedly served as the dive station as well as the transport and any claim otherwise by the defendants is clearly refuted by the record.

Thus, the plaintiff's connection to the Holokai was neither sporadic nor fortuitous and the court finds that the plaintiff satisfies the requirement that he perform "a significant part of his work aboard the ship with at least some degree of regularity."

### 3. Aid in navigation prong

The third prong, the requirement that "the claimant must be aboard primarily to aid in navigation," has traditionally been liberally construed by the majority of courts in order to include crew members not directly linked to the actual navigation of the ship. The Fifth Circuit and the Seventh Circuit developed alternative constructions of the "aid in navigation" requirement, with the Fifth Circuit leading the liberal construction and the Seventh requiring a closer tie to actual navigation. Recently, the United States Supreme Court resolved the conflict in favor of the Fifth Circuit's broad construction under the *Robison* test. The Court, in *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 353, 111 S.Ct. 807, 816, 112 L.Ed.2d 866 (1991) declared that "the time has come to jettison the aid in navigation language." The court added as follows:

We believe the better rule is to define ... "seaman" under the Jones Act ... solely in terms of the employee's connection to a vessel in navigation.... All who work at sea in the service of a ship face those particular perils to which the protection of maritime law, statutory as well as decisional, is directed. It is not the employee's particular job that is determinative, but the employee's connection to a vessel.

*Id.* 498 U.S. at 354, 111 S.Ct. at 817 (citation omitted).

■ The mission of the Holokai at the time in question was to transport men and materials to replace the hose at the Chevron refinery off Barber's Point as well as to serve as a station for the underwater work. Plaintiff's work as a member of the dive team on this mission included work "on the bottom" as well as tending to other divers while "topside". In addition, the plaintiff "tied up and cast off the tug, loaded her with tools and equipment, and helped tow hose strings out to the seabuoy from Campbell Harbor." These duties clearly aided the Holokai in its mission of transporting the men and materials to the site and, obviously, in the ultimate goal of changing the hose. Therefore, the plaintiff clearly meets the third prong of the "seaman" status test.

### C. Mixed question of Law and Fact

The *Wilander* Court declared that the court must define the statutory term "seaman" as a matter of law, but that the jury "finds the facts and, in these cases, applies the legal standard." The court, however, must determine if there is "a reasonable basis" to support the jury's conclusion.

The court further described the roles of the court and the jury in "seaman" status cases as follows:

The inquiry into seaman status is of necessity fact-specific; it will depend on the

nature of the vessel, and the employee's precise relation to it. Nonetheless, summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.

*Id.* 498 U.S. at 356, 111 S.Ct. at 818 (citation omitted).

This court noted in *Ramos* that the issue of whether a claimant is a "seaman" "is normally a matter for a finder of fact to determine after trial." However, the court added, "[T]he matter may be taken from the trier of fact ... where the record demonstrates that reasonable persons could not draw conflicting inferences which might lead to a different conclusion." *Ramos*, 547 F.Supp. at 663. In fact, the court in *Ramos* held the claimant to be a "seaman" as a matter of law, finding that all three prongs of the test were satisfied and that no reasonable jury could find otherwise.

In the instant case, the facts are undisputed that the plaintiff was assigned to the Holokai and as a member of the dive team logged a total of 69 hours over the course of an approximately three-week period. The disputed issue, the plaintiff's connection with the Holokai, has been resolved by this court as a matter of law. This court finds that the connection-to-the-vessel prong of the "seaman" status test is to be measured at the time of the accident, not in context of the plaintiff's overall employment.

Therefore, the court finds that no reasonable jury could find that the plaintiff's tenure of employment on the Holokai of 69 hours did not create a substantial, permanent connection with the vessel.

Accordingly, the court GRANTS the plaintiff's motion for partial summary judgment and finds that he was employed by ADI as a "seaman" at all time of the accident, the relevant time period for coverage under the Jones Act.

IT IS SO ORDERED.